**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

—————————————

No. 96-20363
Summary Calendar

—————————————


BERLIOZ INVESTMENTS, LTD.,

Plaintiff-Appellant-Cross Appellee,

VERSUS

TANGLEWOOD HOMES ASSOCIATION, INC.,

Defendant-Appellee-Cross Appellant.

—————————————————————

Appeal from the United States District Court
for the Southern District of Texas
(H-94-CV-4081)

—————————————————————

January 10, 1997

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Berlioz Investments, Ltd. ("Berlioz"), appeals a declaratory judgment that it may not build a swimming pool, driveway, parking area, fence, or hedge on one of its two lots. Concluding that the subject restrictive covenants do not proscribe the anticipated use, we reverse.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

The relevant facts are not in dispute.  Berlioz, a Bahamian corporation, owes two lots ("Lot 4" and "Lot 20") in the Tanglewood Addition.  The two lots, which face different streets, are offset slightly but abut each other on the rear of each lot.

Berlioz has constructed a house on Lot 20 and wishes to construct a swimming pool, driveway, parking area, fence, and hedge on Lot 4.  All of these improvements will be for the use of the residents of Lot 20, as Berlioz has no intention of building a house on Lot 4.

The lots are subject to restrictive covenants that Tanglewood Homes Association, Inc. ("Tanglewood"), a Texas association, has the right to enforce.[1]  The covenants state, in relevant part:

> (2) This property shall be used for residence purposes only.

> (3) Only one residence shall be constructed on each lot; however, this shall not prohibit the construction of a residence on a portion of two or more lots as shown by said map, provided such tract constitutes a homesite as defined in the succeeding paragraph.

> (4) Parts of two or more adjoining lots facing the same street in the same block may be designated as one homesite provided the lot frontage shall not be less than the minimum frontage of lots in the same block facing the same street.

> . . .

> (6) The word "house" or "residence" as used herein with reference to building lines shall include galleries,

---

[1] The racially restrictive portion of the covenants, of course, is not enforceable.  *See Shelley v. Kraemer*, 334 U.S. 1 (1948).

porches, porte cocheres, steps, projections and every other permanent part of the improvements, except roofs.

Tanglewood denied Berlioz permission to begin construction. Berlioz then filed an action for a declaratory judgment that it could proceed. Tanglewood counterclaimed for a declaration that Berlioz's plans would violate the covenants.

The district court held a bench trial and, at the close of Berlioz's case, granted Tanglewood judgment as a matter of law and denied Tanglewood's request for attorneys' fees. Berlioz filed a timely notice of appeal, and Tanglewood filed a timely cross-appeal of the denial of fees.

II.

A.

Under Texas law, whether a restrictive covenant is ambiguous is a question of law that is reviewed *de novo*. *See Candlelight Hills Civic Ass'n v. Goodwin*, 763 S.W.2d 474, 477 (Tex. App.SSHouston [14th Dist.] 1988, writ denied). A mere disagreement over the interpretation of a covenant does not render it ambiguous. *See Miller v. Sandvick*, 921 S.W.2d 517, 522 (Tex. App.SSAmarillo 1996, writ denied). Instead, a covenant is ambiguous "when it is susceptible of two or more meanings." *Silver Spur Addition Homeowners v. Clarksville Seniors Apartments*, 848 S.W.2d 772, 774 (Tex. App.SSTexarkana 1993, writ denied).

When a covenant is unambiguous, its construction is a question

4

of law reviewed *de novo*.  *See Candlelight Hills*, 763 S.W.2d at 477.
The words and phrases used should be given their "commonly accepted
meaning," and the restriction "may not be enlarged, extended,
stretched or changed by construction."  *Wilmoth v. Wilcox*,
734 S.W.2d 656, 657-58 (Tex. 1987).  "[T]he restrictive clause must
be construed strictly against the party seeking to enforce it."
*Id.* at 657.[2]


B.

We agree with the district court that the relevant paragraphs
of the restrictive covenants, as applied to the instant contro-
versy, are susceptible of only one meaning and thus are unambigu-
ous.  Paragraph 3, read in conjunction with paragraph 4, prohibits
two things: (1) building more than one "residence" on a single lot
and (2) building a single "residence" on two or more lots unless
the lots face the same street and have the appropriate frontage.
This paragraph bars Berlioz's plans only if "residence" includes
swimming pools, driveways, parking areas, fences, and hedges.

Tanglewood urges that "residence" refers to "yards, garages,
driveways, carports, off street parking spaces, fences, and walls,
and/or swimming pools . . . ."  This definition flies in the face
of the commonly accepted meaning of the word.  *Cf.* WEBSTER'S THIRD NEW

---

[2] *Wilmoth* survives the enactment of TEX. PROP. CODE ANN. art. 202.003(a)
(Vernon 1995). *See Ashcreek Homeowners Ass'n v. Smith*, 902 S.W.2d 586, 589 (Tex.
App.SSHouston [1st Dist.] 1995, no writ).

INTERNATIONAL DICTIONARY 1931 (WEBSTER'S) (1986) (defining "residence" as "a building used as a home"). It also is suspect in light of paragraph 6, which defines "residence" (for the purpose of building lines) solely in terms of things that usually are physically attached to a building.[3] Because we conclude that "residence" does not encompass the improvements Berlioz proposed, paragraph 3 does not bar Berlioz's planned construction.

## C.

Tanglewood suggests that paragraph 4 has restrictive power above and beyond its role in defining the restrictions contained in paragraph 3. Again, we find that this reading opposes the commonly accepted meaning of the words in the covenant. Paragraph 4 contains no words of prohibition; it merely explains when two lots facing the same street *may* be designated as a homesite. *Cf. Crispin*, 888 S.W.2d at 81 (stating that a restriction containing no words of prohibition may not be construed to forbid that which it does not allow).

Even assuming *arguendo*, *see, e.g.*, *Rashidi v. American President Lines*, 96 F.3d 124, 126 (5th Cir. 1996), that paragraph 4

---

[3] Tanglewood also suggests that paragraph 3 must be read this broadly or it is meaningless, because city ordinances prevent the construction of a building over the utility easements in the rear of the lots. *See Crispin v. Paragon Homes, Inc.*, 888 S.W.2d 78, 81 (Tex. App.§§Houston [1st Dist.] 1994, writ denied) (stating that a covenant should be construed so as not to render any provision meaningless). Because city ordinances may change, we are not surprised that Tanglewood included this provision in the covenant.

6

has restrictive power, Tanglewood still would not prevail. Paragraph 4 then would prohibit designating lots 4 and 20 as "one homesite." Tanglewood suggests that "homesite" refers to any use of two lots in conjunction with each other. This definition is not consistent with the commonly accepted meaning of "homesite." *Cf.* WEBSTER'S at 1083 (defining "homesite" as "a location suitable for a home"). This provision simply does not prohibit all uses of lots in conjunction with each other. We see no reason why "homesite" should be understood to include a swimming pool as well as a home.

## III.

In conclusion, we find that the Tanglewood restrictive covenants are unambiguous. As a matter of law, they provide no bar to Berlioz's proposed construction. Because Tanglewood no longer is the prevailing party, the question whether the district court abused its discretion in denying Tanglewood legal fees is moot.[4]

The judgment is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

[4] Berlioz requests that the costs of the district court suit be taxed against Tanglewood. We leave the proper allocation of these costs to the sound discretion of the district court.